PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 21, 2001
THOMAS K. KAHN
CLERK

No. 01-11387

D. C. Docket No. 99-02123-CV-S-NE

ESSIE HODGES,

Plaintiff-Appellant,

versus

JO ANNE B. BARNHART, Commissioner
of Social Security Administration,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Alabama

**(December 21, 2001)**

Before ANDERSON, Chief Judge, BLACK, Circuit Judge, and MORENO*,
District Judge

MORENO, District Judge:

_____

*Honorable Federico A. Moreno, U.S. District Judge for the Southern District of Florida,
sitting by designation.

This is an appeal from a denial of social security benefits for mental retardation where the plaintiff did not present affirmative evidence of such disability before the age of twenty-two. The administrative law judge did not presume from the evidence of present mental deficiency that the claimant was mentally retarded before the age of twenty-two. We agree with other circuits in concluding that there is a presumption that mental retardation is a condition that remains constant throughout life. Therefore, we find that a claimant need not present evidence that she manifested deficits in adaptive functioning prior to the age twenty-two, when she presented evidence of low IQ test results after the age of twenty-two. We reverse the district judge with directions to remand to the administrative law judge for a determination of whether there is substantial evidence to rebut this presumption of a fairly constant mental capacity before the age of twenty-two.

BACKGROUND

Essie Hodges applied for Supplemental Social Security income under 42 U.S.C. § 1383. Hodges appealed the denial of benefits before an administrative law judge ("ALJ"). On the date of the administrative hearing, Hodges was 49 years old. She testified that while she had intended to return to school, she only received a seventh-grade education because she was unable to pay for books. She also testified that she could not recall whether she received any special education during her schooling.

2

Although Hodges worked briefly at a fast food restaurant, she testified that she had not gained employment outside the home in the fifteen years preceding the hearing. Hodges also testified that she raised her seven children.

At the hearing, Hodges testified that she suffered from arthritis in her back, anxiety, depression, migraine headaches, blurry vision, bladder failure that caused muscles spasms, blood blisters, and pain in her neck and lower back. According to Hodges, these physical ailments disabled her from working.

Aside from the evidence regarding Hodges' physical condition, the ALJ considered evidence regarding Hodges' mental impairment. In March, 1997, Dr. Thomas W. Tensbrunel examined Hodges at the request of the Division of Disability Determination and administered a Weschler Adult Intelligence Scale ("WAIS") IQ test on her. The WAIS test revealed that Hodges had a verbal IQ of 67, a performance IQ of 79, and a full scale IQ of 72. Dr. Tensbrunel noted that a higher score on the performance scale as compared to the verbal scale was consistent with her limited educational background. Dr. Tensbrunel's prognosis was that Hodges could maintain unskilled employment in the future and manage any finances she accrues. He also referred her to a psychiatrist for treatment for anxiety and depression.

Two non-examining psychologists evaluated the degree of Hodges' mental impairment. In April, 1997, Dr. F.A. Breslin determined Hodges was moderately

limited in the following areas: (1) the ability to understand, remember, and follow detailed instructions; (2) the ability to concentrate for an extended period; (3) the ability to interact appropriately with the public; (4) the ability to respond appropriately to changes in a work setting; and (5) the ability to complete a normal workday without an unreasonable number of rest periods. Dr. Breslin added that Hodges could understand, remember and follow simple two-step tasks and that she could attend to tasks for a two-hour period. Overall, Dr. Breslin thought Hodges capable of working an eight-hour day.

The other non-examining psychologist Dr. T. Michael Hammond evaluated Hodges in June, 1997, and noted that Hodges was moderately limited in the same ways that Dr. Breslin had opined. Dr. Hammond added, however, that Hodges was also moderately limited in her ability to (1) work in proximity to others without being distracted by them; (2) accept instructions and respond appropriately to criticism from supervisors; and (3) work with coworkers and peers without distracting them. He concluded that Hodges could complete simple tasks but recommended contact with others be infrequent and supervision direct and nonconfrontational.

The record is devoid of any evidence relating to Hodges' mental capabilities before the age of twenty-two. Hodges testified that she attempted to get her school transcripts but the records could not be located and were most likely lost in a fire. As

4

far as her reading and writing ability, Hodges testified that she could read a little out of books and letters and could write letters with her daughters' assistance.

The ALJ did not presume that Hodges' mental capabilities at 49 were the same as before twenty-two. Though noting that Hodges had a "severe impairment' based on her borderline intellectual functioning, depression, chronic low back pain, obesity and early chronic obstructive pulmonary disease, the ALJ decided that these impairments did not meet or equal the criteria of any section of the Listing of Impairments under the Social Security Act that would permit a finding that Hodges was disabled. Specifically, the ALJ concluded that Hodges did not meet the criteria for Listing 12.05(c), which addresses mental retardation. The rationale behind this decision as revealed in the ALJ's decision letter is the lack of evidence revealing deficits in adaptive functioning initially manifested during the developmental period before age twenty-two. Thus, the ALJ concluded that Hodges could successfully perform certain jobs despite her impairments.

DISCUSSION

This Court must determine whether the ALJ applied the correct legal standard. Listing 12.05 describes the criteria to qualify for benefits for mental retardation. It states:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested

5

during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . ..C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.05. Hodges alleged that she met the criteria under Listing 12.05(C) for a disability. Though adopting Dr. Tensbrunel's IQ testing as a valid assessment of Hodges' mental capabilities at age 49, the ALJ found no evidence supported the proposition that Hodges manifested deficits in adaptive functioning before age twenty-two as required by Listing 12.05(C).[1]

Acknowledging the lack of IQ evidence before age twenty-two, Hodges asserts that absent evidence of sudden trauma that can cause retardation, the IQ tests create a rebuttable presumption of a fairly constant IQ throughout her life. We agree. Other appellate courts have recognized this presumption finding that IQ's remain fairly constant throughout life. *See Muncy v. Apfel,* 247 F.3d 728, 734 (8th Cir. 2001) ("Mental retardation is not normally a condition that improves as an affected person ages. . . .Rather, a person's IQ is presumed to remain stable over time in the absence

---

[1]Listing 12.00 (D)(6)(c) mandates that

> [W]here more than one IQ is customarily derived from the test administered, e.g. where verbal, performance, and full scale IQs are provided, in the Weschler series,           we use the lowest of these in conjunction with 12.05.

20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.00(D)(6)(c).

6

of any evidence of a change in a claimant's intellectual functioning."); *Luckey v. U.S. Dept. of Health & Human Servs.,* 890 F.2d 666, 668 (4th Cir. 1989) (holding absence of IQ test in developmental years did not preclude finding of mental retardation predating age twenty-two and courts should assume an IQ remained constant absent evidence indicating change in intellectual functioning).

The Eleventh Circuit has not formally recognized this presumption and the issue of whether a claimant must present affirmative evidence that she manifested deficits in adaptive functioning before age twenty-two is one of first impression. This circuit implicitly recognized that a claimant meets the criteria for presumptive disability under Listing 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 and evidence of additional mental or physical impairment. *See Lowery v. Sullivan,* 979 F.2d 835, 838 (11th Cir. 1992). The claimant in *Lowery* presented evidence indicating a deficit in adaptive functioning before age twenty-two. Hodges presented similar evidence of mental disability, but the evidence related to her condition after age twenty-two. The ALJ did not presume from such evidence that Hodges manifested a mental disability prior to age twenty-two. We hold that this failure to presume is error.

It is telling that in the Federal Register, the Commissioner acknowledged that evidence of intelligence testing during the developmental years would *not* be required

7

to meet the criteria of Listing 12.05. The Commissioner stated:

> The proposed listing. . . stated that the significantly subaverage general intellectual functioning with deficits in adaptive behavior must have been initially "manifested" during the developmental period. *We have always interpreted this word to include the common clinical practice of inferring a diagnosis of mental retardation when the longitudinal history and evidence of current functioning demonstrate that the impairment existed before the end of the developmental period."* 65 FR 50746, 50772 (August 20, 2000) (emphasis added).

The ALJ, however, did not recognize the presumption that the claimant had initially met her burden of establishing an impairment under Listing 12.05(C). Therefore, we remand for further proceedings before the ALJ who is to presume, based on this evidence, mental impairment before age twenty-two. At such hearing, the Commissioner may present evidence of Hodges' daily life to rebut this presumption of mental impairment. Our holding adopting a presumption of mental impairment before age 22 does not, however, shift the burden of proof from a claimant to prove entitlement to social security benefits. Accordingly, the judgment of the district court is reversed.

REVERSED and REMANDED.