**Christopher WINSTON, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. CIV.A. 04–G–3494–W.**

United States District Court, N.D. Alabama, Western Division.

March 21, 2006.

William T. Coplin, Jr., Demopolis, AL, for Plaintiff.

Lane H. Woodke, US Attorney's Office, Birmingham, AL, for Defendant.

## MEMORANDUM OPINION

GUIN, District Judge.

The plaintiff, Christopher Winston, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security Benefits. Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir.1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth,* at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth,* at 1239.

## DISCUSSION

■ The court has carefully reviewed the record and finds that the decision of the ALJ must be remanded. The plaintiff alleges he meets Listing 12.05C. Listing 12.05C requires that the claimant have a "valid verbal, performance, or full-scale I.Q. of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." *Davis v. Shalala,* 985 F.2d 528, 531 (11th Cir.1993)(quoting Listing 12.05C). When considering whether the plaintiff has a physical or mental impairment imposing significant work-related limitation of function in addition to a low verbal scale I.Q., the Commissioner must consider the plaintiff's impairments in combination. *Davis* 985 F.2d at 533. The issue of what constitutes "a physical or other mental impairment imposing additional and significant work-related limitation of function" was addressed in *Edwards by Edwards v. Heckler*:

> An impairment imposes significant limitations when its effect on a claimant's ability to perform "basic work activities" is more than slight or minimal. The question under Listing 12.05C, however, is not whether the impairment is in and of itself disabling, thus, "significant"

requires something less than severe within the meaning of § 404.1520(c) [of the Commissioner's Regulations].

755 F.2d 1513, 1515 (11th Cir.1985)(considering whether the presence of chronic obstructive lung disease and exercise induced asthma provided a sufficient additional impairment to meet the second prong of Listing 12.05C.). The second part of the Listing, therefore, imposes a less stringent requirement than that imposed by 20 C.F.R. § 404.1520(c). Section 404.1520 sets forth the five-step sequential process by which a claimant's disability is evaluated. Section 404.1520(c) defines "severe impairment" to require that the impairment or combination of impairments significantly limit the claimant's physical or mental ability to do basic work activities.

■ In addition to a valid I.Q. score meeting the requirements of Listing 12.05C, a plaintiff must also satisfy the diagnostic description in the introductory paragraph of Listing 12.05C. Listing 12.00A ("If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.") The diagnostic description in the introductory paragraph to Listing 12.00 defines mental retardation:

> Mental Retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

Listings 12.05. This imposes three requirements: 1) Significant subaverage general intellectual functioning; 2) deficits in adaptive functioning; and 3) the deficits must be manifested before age 22. *See Crayton v. Callahan,* 120 F.3d 1217, 1219 (11th Cir.1997)("To be considered for disability benefits under section 12.05, a

claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior;[1] and (3) have manifested deficits in adaptive behavior before age 22."). In this circuit, it is presumed that a persons I.Q. remains fairly constant throughout her life and a valid I.Q. test meeting the Listing criteria creates a rebuttable presumption that the condition manifested itself before age twenty-two. *Hodges v. Barnhart,* 276 F.3d 1265, 1268–69 (11th Cir.2001). The *Hodges,* court recognized that although this circuit had not formally recognized this presumption, it had been implicitly recognized in *Lowery v. Sullivan,* 979 F.2d 835, 837 (11th Cir.1992), that when a claimant presents a valid I.Q. score meeting the Listing criteria, she is presumptively disabled under the Listing if the other requirements of the Listing have been met. *Hodges,* 276 F.3d at 1269.

The language of 12.05 closely tracks the DSM–IV–TR definition of mental retardation. The phrase "significantly subaverage general intellectual functioning" is also used in the DSM definition of Mental Retardation. The DSM states that "general intellectual functioning" is defined by the intelligence quotient (IQ or IQ equivalent). DSM–IV–TR at 41. The DSM also defines "significantly subaverage intellectual functioning." "Significantly subaverage intellectual functioning is defined as an IQ of about 70 or below ...." DSM–IV–TR at 41 Therefore, a valid IQ score of 70 or below satisfies the first requirement of the diagnostic description.

The second requirement of the diagnostic description of Listing 12.05 is the presence of "deficits in adaptive functioning." This also is a requirement of the DSM: "Mental Retardation would not be diagnosed in an individual with an IQ lower than 70 if there are no significant deficits or impairments in adaptive functioning." DSM–IV–TR at 42.

The DSM offers guidance in determining whether the diagnostic description of Listing 12.05 has been met. The DSM defines mild mental retardation as an IQ in the range of 50–55 to approximately 70. The DSM description of Mild mental retardation contains the following:

> By their late teens, they can acquire academic skills up to approximately the sixth-grade level. During their adult years, they usually achieve social and vocational skills adequate for minimum self-support, but may need supervision, guidance, and assistance, especially when under unusual social or economic stress. With appropriate supports, individuals with Mild Mental Retardation can usually live successfully in the community, either independently or in supervised settings.

DSM–IV–TR at 43.

In the present case, the plaintiff was examined by Dr. Goff, a neuropsychologist. Dr. Goff administered I.Q. testing yielding the following scores:

| Verbal | Performance | Full Scale |
| --- | --- | --- |
| 59 | 65 | 59 |

Dr. Goff questioned the validity of the results and suspected the plaintiff was malingering: "Those scores are not compatible with the plaintiff's history or background. He says that he has never been in special education classes..... It is possible that he really was in special education classes and just did not want to tell me or did not know about it, but I really do not think that is the case." [R 127]

---

1. The 1992 version of Listing 12.05(C) referred to "adaptive behavior" rather than "adaptive functioning."

The plaintiff also was tested by Dr. Blanton at the referral of his attorney. Dr. Blanton found I.Q. scores as follows:

| Verbal | Performance | Full Scale |
| --- | --- | --- |
| 69 | 63 | 64 |

Dr. Blanton found the plaintiff was "functionally illiterate." [R 123] Dr. Blanton concluded the plaintiff has "Functional Adaptation Problems academically, socially, and occupationally, and these Functional Adaptations appear consistent with his IQ score." [R 123]

■ The ALJ's determination that the plaintiff did not meet Listing 12.05C ignored completely the report of Dr. Blanton. The ALJ's reasoning is as follows:

> The undersigned is unable to accept that the claimant suffers form mild mental retardation, which would be analyzed under Medical Listing 12.05. For example, the claimant informed Dr. Goff that he attended school until the eleventh grade and did not take special education classes. The claimant lived by himself and could provide personal and current information. The claimant obtained a full scale IQ of 59. However, Dr. Goff did not believe this to be a valid score. Specifically, the scores were not compatible with patient's history or background. Dr. Goff also suspected that the claimant was malingering and doing a poor job. The claimant did have very poor spelling and reading abilities, however.

[R 18–19] Although the ALJ noted Dr. Blanton's IQ scores in his narrative discussion of the medical evidence, he does not even mention them in his discussion of Listing 12.05C. A reasonable fact finder would not ignore those results in determining whether the plaintiff met the IQ requirements of that Listing. Because the ALJ failed to recite any reason for rejecting the IQ scores reported by Dr. Blanton, his decision is not reasonable and substantial evidence does not support his conclusion that the plaintiff does not meet Listing 12.05C. For this reason, the action must be remanded for a proper consideration of whether the plaintiff meets Listing 12.05C.

■ An alternate ground for remand is the Appeal's Council's erroneous decision not to review the case. The plaintiff submitted additional evidence to the Appeals Council, which consisted of high school records. These records show that the plaintiff repeated the seventh grade once, and the eighth grade twice. [R 143] They contain reports of his grades, many of which were failing, and show that he withdrew from school during the eleventh grade at age 20.

Claimants are permitted to submit new evidence at each step of the review process, 20 C.F.R. § 404.900(b)("In each step of the review process, you may present any information you feel is helpful to your case. [W]e will consider at each step of the review process any information you present as well as all the information in our records."). The Appeals Council is required to consider the entire record, "including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b); *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir.1994). The Regulations require the Appeals council to "review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b).

To be material the proffered evidence must be "relevant and probative so that there is a reasonable possibility that it would change the administrative result." *Caulder*, at 877. A review of the evidence submitted to the Appeals Council demon-

strates that it meets all of the requirements of the regulations for consideration by the Appeals Council. The Appeals Council's decision states that it considered the evidence, but found that "this information does not provide a basis for changing the Administrative Law Judge's decision." [R 6–7] A review of the ALJ's decision shows that this determination was incorrect. As noted above, the ALJ relied upon Dr. Goff's belief that the plaintiff's IQ scores were not valid to find that he did not meet Listing 12.05C. In particular, the ALJ noted "the claimant informed Dr. Goff that he attended school until the eleventh grade and did not take special education classes." The school records submitted to the Appeals Council undercuts the ALJ's reliance upon the plaintiff having "attended school until the eleventh grade." Had the ALJ been aware that the plaintiff repeated the seventh grade once, and the eighth grade twice, he might not have relied upon the plaintiff having "attended school until the eleventh grade" and might have reached a different conclusion as to whether the plaintiff meets Listing 12.05C.[2]

The importance of the plaintiff's school records is shown by the following statement from Dr. Goff: "The patient is obtaining academic achievement levels at the third grade level. He says that he finished the eleventh grade. That is possible as well if we assume that he might have gone to special education classes, but it is impossible for me to tell about that. School records might be helpful in that regard." [R 127] Dr. Goff expressed a need to review the plaintiff's school records in order to determine whether he was functioning at the third grade level. This clearly shows that any decision made in the absence of the plaintiff's school records is contrary to the weight of the evidence.

For the above alternate reasons, the action is due to be remanded for further development of the record. On remand, the Commissioner shall request that Dr. Goff refine his report following a review of the plaintiff's school records and the report of Dr. Blanton. After the record has been properly developed, the Commissioner shall reconsider whether the plaintiff meets the requirements of Listing 12.05C. She shall also properly consider and make findings as to the impact of Dr. Blanton's report.

An appropriate order will be entered contemporaneously herewith.

### FINAL ORDER

In conformity with and pursuant to the memorandum opinion entered contemporaneously herewith, it is

ORDERED, ADJUDGED and DECREED that the decision of the Commissioner of the Social Security Administration be and it hereby is REVERSED, and the case is REMANDED to the Commissioner pursuant to Sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the memorandum opinion entered contemporaneously herewith. This remand is not pursuant to Sentence six of 42 U.S.C. § 405(g)

Should this remand result in the award of benefits, plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days subsequent to the receipt of a notice of award of benefits from the Social Security Administration. *This order does not extend the time limits for filing a motion*

---

**2.** Plaintiff testified at his hearing that he had     been "held back one grade." [R 151]

*for attorney's fees under the Equal Access to Justice Act.*