

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-28-2007

# Cortes v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3562

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Cortes v. Comm Social Security" (2007). *2007 Decisions.* Paper 182.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/182

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-3562
_____

EVELYN CORTES,

Appellant,

v.

COMMISSIONER OF SOCIAL SECURITY
_____

On Appeal from an Order of the United States District Court
for the Eastern District of Pennsylvania
(Civ. No. 04-cv-05119)
District Judge: The Honorable Lowell A. Reed, Jr.
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 11, 2007

Before: SCIRICA, Chief Judge, RENDELL, and FUENTES, Circuit Judges.

(Opinion Filed: November 28, 2007)

_____

OPINION OF THE COURT

_____

FUENTES, Circuit Judge:

Evelyn Cortes appeals the District Court's order granting summary judgment in

favor of the Commissioner of Social Security Administration ("Commmissioner"), who

denied Cortes's application for Supplemental Security Income ("SSI"). In denying her

claim, an Administrative Law Judge ("ALJ") recognized that the claimant had severe impairments, but nevertheless concluded that the claimant could perform "a significant range of medium work." (App. 17.) Medium work "requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday" as well as lifting and carrying fifty pounds occasionally and twenty-five pounds frequently. 20 C.F.R. § 416.967; Social Security Rule 83-10. To arrive at his conclusion, the ALJ discounted an intelligence test suggesting that the claimant may be mentally retarded and the opinion of two examining physicians, including Cortes's treating doctor. Because we find that the ALJ's conclusion is not supported by substantial evidence, we will vacate the District Court decision and remand for further proceedings.

## I. Facts and Procedural History

Evelyn Cortes is a 46-year-old illiterate woman with a sixth-grade education. She filed an application for SSI on June 25, 1999, alleging disability due to back, knee, and kidney pain; depression; and mental deficiency. During the course of the administrative proceedings, Cortes testified twice and numerous physicians submitted evaluations of Cortes's capacity to perform work-related activities.

Cortes testified on April 3, 2000, through a Spanish interpreter. At the outset of her first hearing, she did not remember her social security number or her mother's age, and stated that she could not read or write. (App. 286, 294.) She indicated that she attended elementary school in Philadelphia, but dropped out in the seventh grade after

failing to learn how to read. Cortes testified that her children had mental impairments: "One has a learning disability, and the other one has the same problem; and the 20 year-old one, he doesn't even know how to make a full sentence or remember where he is." (App. 295.)

Responding to inquiries about her physical impairments, Cortes stated that she had her kidney removed and has frequent back and knee pain. (App. 289.) As a result, Cortes asserted that she cannot lift anything "too heavy," walk more than two blocks without getting tired, kneel without knee pain, or stand or sit for longer than five minutes without numbness in her back. (App. 291-92.) She also testified that she was prescribed two pain medications, Darvoset and Ralafen, as well as a cane, for her knee and back pain. (App. 289-90.) Cortes explained that her ailments impeded her ability to do ordinary chores, such as cleaning, cooking, and shopping, without the assistance of her mother or husband. (App. 292-93.) According to Cortes, she passes most of each day watching television.

The administrative record contains the results from several medical and psychiatric evaluations. The Commissioner sent Cortes for a one-time consultative examination with Dr. Hass Shafia, who submitted a report on August 4, 1999. Dr. Shafia surmised that Cortes should be limited to "occasional" lifting and carrying of no more than ten pounds and "frequent" lifting and carrying of two to three pounds. (App. 205.) Dr. Shafia suggested that Cortes had a limited ability to stand, walk, push, and pull, and had no ability to kneel or crouch. (App. 205-06.) Dr. Shafia's report indicated that Cortes

complained of pain in her back and knees, which prevented her from walking more than a few blocks or ascending more than a single flight of stairs. (App. 203.) Dr. Shafia observed that Cortes "had some difficulty in sitting up while she was on the examining table." (App. 204.) However, he also noted that Cortes appeared to be in no distress when walking into the examination and appeared intelligent, answering all of his questions correctly. (App. 203.) Dr. Shafia's opinion, if accepted by the ALJ, would preclude a determination that Cortes could perform medium work, which requires a greater ability to carry out physical labor.

Soon after Dr. Shafia's report, on September 25, 1999, a non-examining medical expert completed a check-box assessment of Cortes's physical residual functional capacity ("RFC"). Citing to the notes from two visits to Cortes's treating physician (September 8, 1999 and July 16, 1999) and Dr. Shafia's report, the non-examining medical expert concluded that Cortes could perform "medium work," i.e. lift or carry fifty pounds occasionally and twenty-five pounds frequently as well as stand, walk, and sit for six hours in an eight-hour workday. (App. 208-209.) Moreover, the non-examining medical expert asserted that Dr. Shafia's conclusion that Cortes could only lift two to three pounds frequently and ten pounds occasionally was "not supported by objective data," in particular, a normal neurological examination. (App. 213, 209.)

Following the non-examining medical expert's assessment, the record was updated with additional medical tests and assessments. Included were an MRI of the left knee

from February 25, 2000, noting "high-signal abnormality involving the lateral femoral condyle in the dependent portion extending anteriorly," (App. 232), and a medical assessment, also on a check-box form, by Cortes's treating physician, Dr. Irwin Jacobson. (App. 215-222.)

Dr. Jacobson's physical assessment was similar to Dr. Shafia's: Cortes was limited to lifting and carrying up to ten pounds occasionally and up to two pounds frequently, could stand and/or walk up to one hour per day, could sit for one to two hours per day, and could perform no postural activities.[1] Dr. Jacobson also concluded that Cortes was limited with respect to mental work-like activities. He indicated that she had a "seriously limited" ability to follow work rules, deal with stress, function independently, maintain attention or concentration, and carry out simple job instructions. (App. 220-21.)

On June 27, 2000, the ALJ denied Cortes's application after concluding that it was unnecessary to send Cortes for intelligence testing. The ALJ found that Cortes's only severe impairment was a knee ailment, which did not prevent her from performing medium work. After the Appeals Council denied review of the ALJ's decision, Cortes commenced a civil action in the United States District Court for the Eastern District of Pennsylvania. Both parties filed for summary judgment and the case was referred to a Magistrate Judge.

---

[1]The form completed by Dr. Jacobson listed postural activities as climbing, kneeling, crouching, bending, balancing, crawling, or stooping. (App. 218.)

The Magistrate Judge recommended that the District Court grant Cortes's motion for summary judgment and remand to the Commissioner for further development of the record in light of evidence that supported decreased intellectual functioning. (App. 157.) In particular, the results of new testing, an evaluation by the Temple University Hospital Department of Outpatient Psychiatry ("Temple Report"), belied the conclusion that testing was not necessary and "prove[d] that Plaintiff suffers from serious mental impairments." (App. 160, 159 n.3.) The District Court accepted the Magistrate Judge's recommendation and remanded the case. (App. 151.)

The Temple Report stated that Cortes's "current level of intellectual and cognitive functioning fell within the Impaired range with a Full Scale IQ of 58. This places her at less than the 1st percentile when compared to other people of her age." (App. 253.) According to the Temple Report, "[h]er performance [on the IQ test] suggests Mild Mental Retardation." (App. 255.) Her diagnosis, however, was made "provisional" because "a formal diagnosis of mental retardation must occur prior to the age of 18." (App. 255.) Nevertheless, the Temple Report suggested that Cortes's "history of academic difficulties, inability to learn how to read, premature withdrawal from school, and impaired personal, social and occupational functioning" support the possibility that Cortes had been previously diagnosed with mental retardation, which would have allowed a formal retardation diagnosis. (App. 255.) The Temple Report also analyzed Cortes's personality functioning, concluding that Cortes had "a limited ability . . . to handle stress,

-6-

particularly within interpersonal situations" and "does not seem to understand people and social norms," which makes her "more vulnerable to problems in everyday living." (App. 255.) The Temple Report issued the following diagnosis: "Major Depressive Disorder, Recurrent, Severe with Psychotic features," "Provisional Mild Mental Retardation," "Hypertension," and "Family Distress." (App. 255.)

A supplemental administrative hearing was held on August 26, 2004, at which Cortes testified that she began receiving treatment for depression since 2000. She stated that she frequently "wanted to be alone," "was angry at everyone," didn't sleep much, was always tired, and cried "[s]ometimes every day." (App. 113.) She also asserted that her depression was worse in 2004, after treatment, than it had been in 2000.

On September 24, 2004, the ALJ again denied Cortes's application. Proceeding through the five-step analysis employed by the Commissioner to evaluate SSI claims,[2] the

---

[2] The five-step analysis was explained in <u>Schaudeck v. Comm'r of Soc. Sec. Admin.</u>, 181 F.3d 429 (3d Cir. 1999):

> The sequence is essentially as follows: (1) if the claimant is currently engaged in substantial gainful employment, she will be found not disabled; (2) if the claimant does not suffer from a "severe impairment," she will be found not disabled; (3) if a severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last continually for at least twelve months, then the claimant will be found disabled; (4) if the severe impairment does not meet prong (3), the Commissioner considers the claimant's residual functional capacity ("RFC") to determine whether she can perform work she has done in the past despite the severe impairment-if she can, she will be found not disabled; and (5) if the claimant cannot perform her past work, the Commissioner will consider the claimant's RFC, age, education, and past work experience to determine whether she can perform other work which exists in the national economy. See

ALJ concluded that (1) Cortes has not been engaged in substantial gainful activity since June 1, 1979; (2) Cortes's left knee pain and depression are severe impairments; (3) Cortes's impairments or combination of impairments do not meet or equal the criteria of a listed impairment in Appendix 1, Subpart P, Regulations No. 4; and (4) Cortes has no history of past relevant work. At step (2) the ALJ determined that Cortes's subaverage intellectual functioning was not a "severe" impairment, let alone mental retardation. The ALJ then found that Cortes retains the residual functional capacity (RFC) to perform a full range of medium work and only simple, routine tasks. To reach this conclusion, the ALJ rejected Drs. Shafia and Jacobson's opinions, stating that they were not supported by the record. Rather, the ALJ credited the non-examining medical consultant's opinion. (App. 144, 156 n.6.) The ALJ then concluded at step (5) that based on Cortes's age, limited education, and RFC, she could make a vocational adjustment to work that exists in significant numbers in the regional and national economies. Hence, Cortes was not disabled and was not entitled to receive SSI. (App. 144.) The Appeals Council denied Cortes's request for review of the ALJ's second decision, which prompted Cortes to file an action in the United States District Court for the Eastern District of Pennsylvania seeking judicial review of the Commissioner's final determination. Both parties moved for summary judgment, and on June 1, 2006, the District Court adopted the Magistrate

---

id. § 404.1520(b)-(f).
Id. at 431-32.

Judge's Report and Recommendation, granting the Commissioner's request for summary judgment while denying Cortes's motion. This appeal followed.[3]

## II. Standard of Review

"While we exercise plenary review with respect to the order for summary judgment, our review of the ALJ's decision is more deferential as we determine whether there is substantial evidence to support the decision of the Commissioner." Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

## III. Analysis

The Commissioner argues that the ALJ's determination that Cortes can perform medium work is supported by substantial evidence in the record and must be affirmed. However, our review convinces us that the ALJ erred in applying the relevant legal standards to the facts of this case. In particular, at step (2) the ALJ did not adequately substantiate his conclusion that Cortes is not afflicted by a severe mental deficiency. Moreover, substantial evidence does not support the ALJ's dismissal of the examining physicians' opinions in favor of the opinion provided by the non-examining medical expert.

---

[3]We have jurisdiction pursuant to 28 U.S.C. § 1291 and 42 U.S.C. § 405(g).

Cortes argues that the ALJ did not adequately consider her evidence that she suffered from a severe mental deficiency. In particular, Cortes argues that the ALJ did not afford appropriate weight to her IQ score, which was uncontested evidence that her current level of intellectual and cognitive functioning was severely impaired. According to Cortes, her IQ score and testimony regarding her mental deficiencies prior to age 22 were sufficient for her to prove mental retardation.

The Commissioner's regulations set forth two requirements for a showing of mental retardation. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. First, a claimant must prove "subaverage general intellectual functioning with deficits in adaptive functioning" manifesting before age 22. Id. Second, the claimant must show that any one of four criteria satisfies the required severity. One criterion is "[a] valid verbal, performance, or full scale IQ of 59 or less." § 12.05B.

The ALJ concluded that Cortes did not meet her burden for establishing mental retardation:

> The representative argued that the claimant was mentally retarded and met listing 12.05. However, there is no diagnosis of retardation in the record, only a provisional one. IQ testing was performed with the Wechsler Adult Intelligence Scale and revealed a full scale IQ of 58. The claimant testified that she did not attend a special education program but did have special assistance with reading for a few hours on 3 occasions. Dr. Jacobson, who treated the claimant for more than 25 years, never noted that the claimant had any difficulty comprehending instructions. Moreover, she had a normal neurological examination and presented as intelligent, answering all questions correctly, during the consultative examination. Mental

retardation is, thus, not a medically determinable impairment.

(App. 13-14, internal citations omitted.)

Cortes received an IQ score of 58. While, "[t]he Commissioner is not required to accept a claimant's IQ scores and may reject scores that are inconsistent with the record," Markle v. Barnhart, 324 F.3d 182, 186 (3d Cir. 2003), in this case the ALJ does not purport to reject Cortes's IQ score. Cortes's score, according to the Temple Report, places her present intellectual and cognitive functioning at less than the first percentile when compared to other people her age. The ALJ notes that the final diagnosis of mental retardation was provisional, but this observation had nothing to do with the validity of Cortes's IQ score or the related conclusion that her intellectual functioning was sub-average.[4] Rather, the Temple Report qualified the diagnosis of mental retardation as "provisional" because there was no record that Cortes was diagnosed with mental retardation prior to age 18, a consideration that we address below. The ALJ stated that Dr. Jacobson "never noted that the claimant had any difficulty comprehending instructions," but this is insufficient to discount the implication of Cortes's IQ score. As

_____

[4]The regulations recognize that the commentary accompanying an IQ score should be consulted in evaluating the credibility of the test result. "[S]ince the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(a). In the present case the ALJ does not purport to discredit the actual test result, but rather the final diagnosis of Cortes's mental retardation.

Cortes indicates, Dr. Jacobson never treated her for mental retardation and had no documents or tests from which to form a judgment. (Appellant's Reply Br. 4-5.) In addition, Dr. Jacobson's assessment of her residual functional capacity observed that Cortes would have difficulty following instructions in the workplace. Finally, the fact that Dr. Shafia noted that Cortes "presented as intelligent" during his examination is not sufficient medical evidence to call into doubt the extensive evidence of sub-average general intellectual functioning.

The Commissioner argues that Cortes did not provide evidence that her medical impairment existed before age 22, as required by the Regulations. Many claimants have difficulties corroborating the early onset of mental retardation. While some courts of appeals have applied a rebuttable presumption that a current mental impairment existed before age 22, see, e.g., Hodges v. Barnhart, 276 F.3d 1265 (11th Cir. 2001), we have rejected such a presumption. Williams v. Sullivan, 970 F.2d 1178, 1185 (3d Cir. 1992). Rather, we have held that the claimant has the burden of establishing the existence of mental retardation during the developmental period. Id.

The Commissioner has clarified that in order for a claimant to carry her burden with respect to the onset of mental retardation, it is unnecessary to produce "intelligence testing (or other contemporary evidence) prior to age [22]." Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50772 (August 21, 2000). The claimant need only produce evidence that "demonstrates or

-12-

supports onset of the impairment before age 22." Id. In Markle, we concluded that evidence showing that a claimant "took special education courses through ninth grade, dropp[ed] out after two months in tenth grade[,] . . . 'struggled' to obtain a GED[, and] . . . ha[d] not held a job for at least fifteen years" was "consistent with, and, depending on one's interpretation, could be said to support early onset" of mental retardation. 324 F.3d at 189. Given such a showing, this Court remanded the case to the ALJ to address the claimant's mental deficiency prior to age 22. See id.[5]

Unfortunately for Cortes, she was a poor historian. (App. 255.) She could not produce documents from her youth that might demonstrate the early existence of mental retardation. One source from which she tried to procure such evidence, the last school she attended, had long since closed. However, she testified that she could not learn how to read or write while in school. She also testified that while there were no special education courses, her teacher recognized her difficulty and pulled her out of class for special assistance. (App. 111.) In addition, Cortes has no recent work experience.

Cortes's testimony was similar to that produced in Markle, and likewise, we find that it "demonstrates or supports onset of the impairment before age 22." Based on the

---

[5]In Williams v. Sullivan, we held that the claimant had not met his initial burden of proof with regard to mental retardation. 970 F.2d 1178, 1185 (3d Cir. 1992). However, in Williams, there was evidence supporting the recent onset of mental retardation, which distinguishes it from both Markle and the present case. See Markle v. Barnhart, 324 F.3d 182, 180 & n.2 (3d Cir. 2003). In particular, Williams maintained a job for most of his adult life. Williams, 970 F.2d at 1185.

regulations and our case law, we hold that Cortes satisfied her initial burden with respect to this issue.

The ALJ's analysis is insufficient to rebut Cortes's evidence regarding the early onset of her mental impairment. The ALJ referenced the absence of any mention of mental deficiency in Dr. Jacobson's treating notes and Dr. Shafia's comments regarding Cortes's "intelligent" presentation and normal neurological examination. However, this evidence, or lack of evidence, does not provide substantial medical support for a conclusion regarding Cortes's mental capacity before age 22. As mentioned above, Dr. Jacobson never treated Cortes for her mental deficiency. Meanwhile, Dr. Shafia's comments regarding Cortes's "intelligent" presentation and normal neurological examination do not cast any light on her mental functioning prior to age 22. In sum, the ALJ has not provided adequate support for his rejection of Cortes's testimony.[6]

Because we find that the ALJ did not adequately support his conclusion that Cortes did not have a severe mental impairment warranting the provision of SSI, we will remand to the agency. INS v. Ventura, 537 U.S. 12, 16 (2002). On remand, the record shall be

_____

[6]The Commissioner suggests that the ALJ's decision was based on Cortes's level of adaptive functioning, which was inconsistent with a finding of mental retardation. (Comm'r Br. 24.) As Cortes notes, the ALJ never ruled on the "adaptive functioning" issue. (Appellant's Reply Br. 4.) "The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." SEC v. Chenery Corp., 318 U.S. 80, 87 (1943). We decline to consider what significance, if any, an adaptive functioning determination would have on the outcome of this case.

-14-

reopened for additional evidence regarding Cortes's mental impairment.[7] Given the understandably limited information Cortes was able to provide regarding her mental status before age 22, "the ALJ may well believe . . . that he should develop the record further—as is his duty—and . . . obtain an expert opinion as to the likely onset of the retardation." Markle, 324 F.3d at 189; see also Social Security Ruling ("SSR") 83-20, Titles II and XVI: Onset of Disability, 1983 WL 31249, *3 ("At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred."); Walton v. Halter, 243 F.3d 703, 709 (2001) ("[T]he ALJ could not, consistent with SSR 83-20 and the necessity of establishing an onset date based on substantial evidence, simply ignore [evidence suggesting an onset date before age 22] and draw an inference from the record evidence having no substantial medical support.")

**B.**

Cortes next argues that the ALJ's "physical" RFC determination—that Cortes can perform medium work—is not supported by substantial evidence. The ALJ came to his conclusion by discounting the opinions of Drs. Shafia and Jacobson that Cortes was capable of lifting only ten pounds occasionally and two or three pounds frequently, and had a limited ability to stand, walk, push, pull, and do postural activities. Rather, the ALJ

---

[7]Cortes has brought to this Court's attention the existence of a supplemental assessment that was obtained following her appeal and allegedly bears on her intellectual disability, entitled "Bilingual Medical Psychological Specialty and Individual Intellectual Evaluation for Disability." On remand, Cortes should be permitted to offer this assessment into evidence.

adopted the non-examining medical expert's opinion that Cortes could lift fifty pounds occasionally and twenty-five pounds frequently; stand or walk, off and on, for approximately six hours in an eight-hour workday; and bend or stoop frequently. We agree with Cortes that the ALJ's determination was not supported by substantial evidence.

The ALJ granted controlling weight to the non-examining medical expert's assessment. While the ALJ's opinion states that this assessment was "based on a review of prior medical records," (App. 15), the record shows that it was in fact based on only a small portion of the final record. Following the submission of the non-examining medical expert's report, the record was expanded to include Dr. Jacobson's opinion, which showed agreement with Dr. Shafia's opinion that Cortes could not perform medium work. The record was also supplemented by an MRI that documented abnormalities in Cortes's left knee. Given that Cortes's "severe" knee impairment is an orthopedic disorder, a radiological test like the MRI would be considered probative, perhaps more so than a neurological test. The limited evidence in front of the non-examining expert may explain why the only rationale provided for disagreeing with Dr. Shafia's physical assessment was a negative neurological examination. (App. 213, 209.) The problematic reliance upon the non-examining expert's opinion is compounded further by the fact that it was the only medical assessment relied upon to trump an opinion by the treating physician, Dr. Jacobson. See Morales v. Apfel, 225 F.3d 310, 320 (3d Cir. 2000) ("[A] single piece of evidence is not substantial if . . . it is overwhelmed by other evidence—particularly that

offered by a treating physician."); 20 C.F.R. § 404.1527(d)(2) (stating that a treating physician is "most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Because the case will be remanded for further proceedings it is unnecessary to address Cortes's contentions that the Commissioner improperly applied regulatory standards for illiteracy and education, understated the significance of Cortes's depression, and failed to consider Cortes's pain. Such deficiencies, if they exist, can be addressed in a future proceeding.

## IV. Conclusion

For the foregoing reasons, the decision of the District Court will be vacated and the case remanded for further proceedings before the ALJ consistent with this opinion.