[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12920
Non-Argument Calendar
_____

D.C. Docket No. 7:14-cv-01718-CLS

DERWIN HUBBARD,

Plaintiff-Appellant,

versus

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,
Carolyn W. Colvin, Acting,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(February 17, 2016)

Before WILSON, MARTIN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Derwin Hubbard appeals the district court's decision affirming the Social

Security Administration's (SSA) denial of his application for social security

disability insurance (SSDI) benefits and supplemental security income (SSI).

Hubbard claims he proved the level of mental impairment required for both sets of

benefits.  After careful review, we find that the Administrative Law Judge's (ALJ) decision to deny benefits was not supported by substantial evidence and based upon proper legal standards.  We therefore reverse and remand to the district court with instructions to remand to the ALJ.

## I.

We review the ALJ's decision "to determine if it is supported by substantial evidence and based upon proper legal standards."  Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  Both SSDI and SSI benefits require proof of a disability.  42 U.S.C. § 423(a)(1)(E); id. § 1382(a)(1), (2).  A disability is any medically determinable impairment that has lasted or is expected to last for at least twelve continuous months and that makes the claimant unable to engage in substantial gainful activity.  Id. § 423(d)(1)(A); id. § 1382c(a)(3)(A).  If a claimant meets all the diagnostic criteria for one of the Listings in the SSA's Listing of Impairments, he qualifies for benefits.  See Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990).

The claimant bears the burden of showing he meets the SSA's diagnostic criteria.  Barron v. Sullivan, 924 F.2d 227, 229 (11th Cir. 1991).  To make this showing, a claimant "must provide medical reports documenting that [his] conditions meet the specific criteria of the Listings and the duration requirement."  Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (per curiam).

2

Listing 12.05 gives this diagnostic description of "intellectual disability": "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05.  The SSA has not defined the term "deficits in adaptive functioning," but, according to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV"),[1] adaptive functioning "refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting."  DSM-IV at 42.

Once a claimant meets Listing 12.05's diagnostic threshold, he must also show the Listing's required level of severity through one of four sets of criteria. As relevant to this case, the criteria include "[a] valid verbal, performance, or full scale IQ of 60 through 70" as well as some other physical or mental impairment that imposes "additional and significant work-related limitation of function."  20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05(C); see also 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00 ("If your impairment satisfies the diagnostic description in the

---

[1] Hubbard's brief also cites the Fifth Edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM-V"), which was released in May 2013.  See American Psychiatric Association, DSM-5 Development: Timeline (2014), http://www.dsm5.org/about/Pages/Timeline.aspx.  The ALJ issued a decision in Hubbard's case in January 2013. Because DSM-V was not available to the ALJ at the time this case was decided, we rely on DSM-IV.

3

introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.").

## II.

The ALJ found that Hubbard was not disabled within the meaning of Listing 12.05 because he did not have deficits in adaptive functioning.  We conclude that this finding was not "supported by substantial evidence and based upon proper legal standards."  Lewis, 125 F.3d at 1439.

Hubbard has a qualifying full scale IQ score of 65 and chronic sinusitis, which the ALJ classified as a "severe impairment."  Absent evidence of sudden trauma, a qualifying IQ score creates a rebuttable presumption that a claimant manifested deficits in adaptive functioning before age 22.  See Hodges v. Barnhart, 276 F.3d 1265, 1269 (11th Cir. 2001).  The SSA bears the burden of presenting evidence to rebut this presumption.  Id.

The ALJ failed to apply this presumption.  Instead, he said that Hubbard "does not have a valid verbal, performance, or full scale IQ of 60 through 70" and criticized "the speculative nature of Dr. Goff's estimating and approximating [Hubbard's] IQ."  We agree with the district court that this "observation simply is not supported by the record."  Dr. Goff determined Hubbard's IQ score after conducting intelligence testing and there are no conflicting scores in the record. The ALJ erred by disregarding Hubbard's score, which should have triggered the

Hodges presumption.  See 276 F.3d at 1269.

The ALJ also erred in giving limited weight to Dr. Goff's assessment because of another district court's criticism of Dr. Goff's findings in a separate case from over a decade ago.  In King v. Apfel, No. CIV.A. 99-0132-RV-M, 2000 WL 284217 (S.D. Ala. Feb. 29, 2000) (unpublished), a district court found that "everything else in the record is counter to the extreme findings of [Dr.] Goff."  Id. at *2.  On this basis, the ALJ found "a history of questionable veracity to [Dr. Goff's] opinions."  We agree with the district court that the statements in King "amount to nothing more than the court's agreement with the ALJ's decision to reject Dr. Goff's findings in that case."  As the district court explained in this case, "[t]he rejection of Dr. Goff's opinion in a single case that was decided fifteen years ago cannot reasonably form the basis for rejecting, or even affording extra scrutiny to, his opinions in this case."  While an ALJ is certainly free to give less weight to an expert opinion that "was not bolstered by the evidence," Lewis, 125 F.3d at 1440, he must do so on the basis of the record before him.

## III.

A valid IQ score is not conclusive evidence that a claimant has deficits in adaptive functioning if the "score is inconsistent with other evidence in the record on the claimant's daily activities and behavior."  Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992).  The ALJ invoked this principle to further discount

Hubbard's IQ score. However, the ALJ relied on conclusions about Hubbard's work and school history that were not supported by substantial evidence.

First, the ALJ found that Hubbard's work history suggested "his ability to adapt to [] various work environments, handle work stress, follow instructions, and interact with co-workers and supervision." In fact, Hubbard performed one type of job for fourteen years—"shovel[ing] dirt" with an oil drill. According to Hubbard's testimony, while he could have still performed this job when it ended in 2006, he could no longer do so by the time of his 2012 SSA hearing. As the district court noted, the ALJ incorrectly concluded from this testimony that Hubbard "could still perform his former job" at the time of the hearing. The record does not support the ALJ's conclusions about Hubbard's work history.

The ALJ also relied on Hubbard's educational record in finding a lack of adaptive deficits. According to the ALJ, even though Hubbard had "a history of special education, he was able to receive a certification of completion of the twelfth grade." In addition, the ALJ said Dr. Goff's testing indicated a mid-fourth grade reading, spelling, and math level, "which the vocational expert testified would allow the claimant to perform the jobs indicated." However, Dr. Goff noted that Hubbard indicated that he had to repeat seventh grade and was in special education classes throughout his entire educational career. Dr. Goff also noted that Hubbard "may have received a certificate of attendance," not completion.

6

Furthermore, Dr. Goff's testing actually resulted in "word reading and spelling skills at the ending second grade level," which "reflect[s] functional illiteracy." The ALJ's misstatement of Hubbard's academic abilities, which misstatement was also identified by the district court, is significant because the vocational expert made job recommendations for a person at the mid-fourth grade level, not the second grade level. Hubbard's school record does not support the ALJ's conclusions about his academic abilities.

## IV.

Despite identifying multiple "careless" errors in the ALJ's opinion, the district court relied on Hubbard's work history, "along with his ability to perform basic personal tasks like driving, paying bills, and performing self-care functions," to affirm the ALJ's decision. Like the ALJ, the district court failed to acknowledge the rebuttable presumption of deficits in adaptive functioning raised by Hubbard's low IQ score. And, in relying on evidence of Hubbard's ability "to perform basic personal tasks," the district court affirmed based on its own post hoc rationale. However, we decline to affirm using reasoning that "might have supported the ALJ's conclusion" but was not offered by the ALJ himself. See Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam).

Beyond that, the district court's conclusions about Hubbard's daily activities are not supported by the record. Although Hubbard testified to driving, he has

7

never had a license.  And although the district court found that Hubbard pays his own bills, the record reflects that he does not manage his own bank account, cannot use a checkbook, and that his mother budgeted his money for him when he was working.  As for self-care functions, Hubbard's testimony and questionnaire responses reflect that he does not prepare his own meals, does not do any housework, cannot read or complete job applications on his own, and has never lived alone.  Hubbard's activities are consistent with a finding of deficits in adaptive functioning and do not support the district court's contrary conclusion.

V.

On this record, we reverse and remand to the district court with instructions to remand to the ALJ.

**VACATED AND REMANDED.**

8