[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10190
Non-Argument Calendar
_____

D.C. Docket No. 2:16-cv-00128-WS-M

MARKUS JAMAAL RUDOLPH,

Plaintiff-Appellant,

versus

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(September 14, 2017)

Before ED CARNES, Chief Judge, HULL, and WILSON, Circuit Judges.

PER CURIAM:

An administrative law judge denied Markus Jamaal Rudolph's application for supplemental security income because, among other things, he found that Rudolph's mental deficiencies did not initally manifest before he turned twenty-two.  This is Rudolph's appeal.

I.

Rudolph, who is currently thirty-two years old, alleged a disability onset date of January 31, 2008.  In support of his application for SSI, Rudolph presented evidence that mental disabilities precluded his ability to work.  He submitted IQ test results showing a verbal comprehension score of 68 and a full scale score of 70, which is near the second percentile from the bottom.  Other evidence showed that he struggled in school, repeated the second grade, and was placed in a special education program.  An expert witness testified that his school performance was "consistent with borderline intellectual function."

ALJs use a five step test to decide whether a claimant qualifies as "disabled" for SSI purposes.  See 20 C.F.R. § 404.1520(a)(1), (4); Sullivan v. Zebley, 493 U.S. 521, 525, 110 S. Ct. 885, 888 (1990).  As the Supreme Court has explained:

> The first two steps involve threshold determinations that the claimant is not presently working and has an impairment which is of the required duration and which significantly limits his ability to work.  In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work.  If the claimant's impairment matches or is equal to one of the listed impairments, he qualifies for benefits without further inquiry.  If the claimant cannot qualify under the

2

listings, the analysis proceeds to the fourth and fifth steps. At these steps, the inquiry is whether the claimant can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience. If the claimant cannot do his past work or other work, he qualifies for benefits.

Zebley, 493 U.S. at 525–26, 110 S. Ct. at 888–89 (citations and quotation marks omitted).

The ALJ in this case found that Rudolph satisfied the first two steps but concluded that Rudolph did not meet the requirements of the third step. The ALJ's decision analyzed at some length whether Rudolph satisfied one of the listed impairments, Listing 12.05D, ultimately determining that his limitations were not severe enough to meet that Listing's criteria. It then dismissed, with much less analysis, the possibility that Rudolph qualified under Listings 12.05A, 12.05B, or 12.05C. Although the decision acknowledged that Rudolph had an IQ score of only 70, it stated that there was "no evidence indicating the Claimant's [borderline intellectual functioning] was present in school." It also pointed to several pieces of evidence, such as Rudolph's 2.5 GPA in high school, that tended to show that Rudolph did not suffer severe mental deficiencies during childhood and adolescence. As a result, the ALJ found that Rudolph did not meet the requirements of any listed impairment.

Because Rudolph did not qualify as "disabled" under the step three analysis, the ALJ proceeded to steps four and five. At step four he found that Rudolph had

3

no past relevant work experience.  But because at step five the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Rudolph] can perform," he concluded that Rudolph did not qualify as "disabled" and was not entitled to SSI.  See 42 U.S.C. § 1382c(a)(3)(B) ("[A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy . . . .").

Rudolph requested review by the Appeals Council.  The Appeals Council denied his request, making the ALJ's decision the final decision of the Commissioner of Social Security.  See Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998).  Rudolph then filed a complaint in the district court challenging the decision.  The district court affirmed the Commissioner's decision and dismissed Rudolph's complaint.

## II.

Rudolph contends that the ALJ erred in concluding at step three that he did not meet the requirements of Listing 12.05C.[1]  When we review a final decision by the Commissioner, "[t]he Commissioner's factual findings are conclusive if supported by 'substantial evidence,' which is relevant evidence as a reasonable

---

[1] Rudolph does not challenge the ALJ's determinations about any of the other Listings.

4

person would accept as adequate to support a conclusion." Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1260 (11th Cir. 2007) (citation and some quotation marks omitted). But "we review de novo the Commissioner's conclusions of law." Id. The Commissioner's (meaning, in this case, the ALJ's) "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." See id.

Although Listing 12.05 has been amended since the ALJ issued his decision, we apply Listing 12.05C as it read on the date of the ALJ's decision. See Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66138 n.1, 66167 (Sept. 26, 2016) (amending Listing 12.05 and noting that the Social Security Administration "expect[s] the Federal courts will review [its] final decisions using the rules that were in effect at the time [it] issued the decisions"). At the relevant time, Listing 12.05C required "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C. In addition, the Listing required that the claimant's intellectual disability have "initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." Id. § 12.05.

5

Under our decision in Hodges v. Barnhart, 276 F.3d 1265 (11th Cir. 2001), this Court applies a rebuttable presumption that the claimant's intellectual disability initially manifested before he turned twenty-two if he submits a valid low IQ score from a test taken after he has turned twenty-two. Id. at 1266, 1269. We have indicated that a valid IQ score of 60 to 70 gives rise to that presumption. See id. at 1269. The upshot is that a claimant who shows that his IQ is in the range of 60 through 70 and that he has a "a physical or other mental impairment imposing an additional and significant work-related limitation of function" has satisfied the requirements of Listing 12.05C unless the Commissioner can rebut the Hodges presumption. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C.

Here, the ALJ concluded that there was "no evidence indicating" that Rudolph's intellectual disability "was present in school." That conclusion is flawed legally and factually.

It is legally flawed because it does not appear that the ALJ applied the Hodges presumption. Rudolph submitted IQ test results showing a full range score of 70, which is in the range of 60 through 70, and the ALJ did not dispute the validity of those results in his decision. That evidence should have given rise to the Hodges presumption, and under that presumption Rudolph could have carried his Listing 12.05C burden without presenting any evidence of his intellectual disability manifesting before he turned twenty-two. See 276 F.3d at 1266. Yet the

6

ALJ's decision never mentions the Hodges presumption; instead, it appears to analyze the issue as if the burden were still on Rudolph to prove the prior manifestation of his disability. The ALJ's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." See Ingram, 496 F.3d at 1260.

The ALJ's conclusion is factually flawed because Rudolph did present evidence, beyond his adult IQ score, that he was mentally disabled during his school years. For example, he submitted records showing that in second grade he received the lowest possible score on an Alabama standardized reading and writing test, and that he was then held back to repeat second grade. And he called an expert witness who interpreted those school records and opined that they indicated that Rudolph had only "borderline" intellectual function during his school years. That is not "no evidence."

For those reasons, we must remand this case for further proceedings. On remand the ALJ must apply the Hodges presumption in his step three analysis, or explain why the presumption does not apply.[2] He must then decide, based on the record as a whole, whether Rudolph has met the requirements of Listing 12.05C.

---

[2] The Hodges presumption would not apply, for example, if the ALJ were to find on remand that Rudolph's IQ score is invalid. But if the ALJ does not apply the presumption, he must explain the basis for not applying it and point to the evidence supporting the existence of that basis.

We note that a valid IQ score in the range of 60 through 70 would not, by itself, be sufficient for Rudolph to satisfy Listing 12.05C.  The Commissioner may rebut the Hodges presumption, in which case Rudolph would not qualify under Listing 12.05C.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C.  And even if the presumption is not rebutted, Rudolph must still show that he meets the last requirement of Listing 12.05C, which is that he has "a physical or other mental impairment" — in addition to his low IQ — "imposing an additional and significant work-related limitation of function."  See id.  To the extent the further consideration of step three is relevant to steps four and five, the ALJ may reconsider his conclusions with respect to those steps as well.[3]

   **REVERSED AND REMANDED.**

---

[3] Because we are remanding the case on this basis, we do not address Rudolph's other challenges to the Commissioner's decision.

8